In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-15-00317-CR
_____

TROY JAMARKUS GARNER, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 258th District Court
Polk County, Texas
Trial Cause No. 23184

MEMORANDUM OPINION

Troy Jamarkus Garner appeals his conviction for engaging in organized criminal activity. *See* Tex. Penal Code Ann. § 71.02(a) (West Supp. 2016).[1] In two issues, Garner challenges the sufficiency of the evidence to support the conviction and contends that the trial court erred in admitting evidence of extraneous bad acts.

---

[1] Because the 2015 amendment to section 71.02 does not affect the outcome of this appeal, we cite to the current version.

1

# I. Background

The indictment in this case alleged that Garner

> did then and there with intent to establish, maintain, and participate in a combination and in the profits of a combination, said combination consisting of Vikki Nixon, Troy Jamarkus Garner, and Shelby Waldrep, agree to commit the offense of Delivery of a Controlled Substance Penalty Group One in an amount of one gram or more but less than four grams including any adulterants or dilutants to-wit: By Shelby Waldrep committing the overt act of bringing a controlled substance to the Polk County Jail[.]

The State produced telephone conversations that were recorded while Garner was incarcerated in the Polk County Jail. In the conversations, Garner can be heard arranging to have Waldrep obtain methamphetamine from Nixon and smuggle it to him inside the jail. In the course of the conversations, Garner states that his business with Nixon is good, thanks Nixon for everything she does, and indicates that he will make things happen when he gets out of jail on bond.

Waldrep obtained methamphetamine from Nixon, placed it inside a container of over-the-counter medicinal cream, and delivered it to the jail for delivery to Garner. The contraband was discovered by a jailer upon inspection of the cream. An officer confronted Waldrep, who eventually confessed and implicated Garner and Nixon. The officer's investigation into the jail telephone recordings resulted in the discovery of the telephone conversations Garner had with Nixon and Waldrep four or five hours before Waldrep smuggled the drugs into the jail. Execution of a search

2

warrant on Nixon's residence a week or two later resulted in the seizure of methamphetamine.

In Garner's trial, Waldrep testified that she pleaded guilty to engaging in organized criminal activity in connection with the incident.[2] Waldrep testified that she and Garner frequently used methamphetamine together. Waldrep stated that she only obtained methamphetamine from Nixon one time, when Nixon gave her methamphetamine to deliver to Garner in the jail.

A narcotics officer testified that as part of an investigation of drug dealing by Garner and Garner's brother, an informant purchased $140 worth of methamphetamine from Garner in a controlled buy, approximately six weeks before the incident at the jail. Neither Nixon nor Waldrep were involved in the controlled buy. The informant testified that she had purchased drugs from Garner on at least one other occasion before the date of the controlled buy.

Another officer testified that he arrested Garner for possessing drug paraphernalia one month before the jail incident occurred. A search of Garner's vehicle and the surrounding area yielded a pipe, a set of scales disguised as a cigarette pack, $1001 in currency, and methamphetamine. Neither Nixon nor Waldrep were with Garner at the time.

_____

[2] No record of any conviction was introduced into the record before us.

The jury found Garner guilty of engaging in organized criminal activity as charged in the indictment. The trial court sentenced Garner to ten years of imprisonment.

## II. Sufficiency of the Evidence

When evaluating the sufficiency of the evidence, we view all of the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We "must give deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper*, 214 S.W.3d at 13 (quoting *Jackson*, 443 U.S. at 319). "The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses." *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). In this role, the jury may "choose to believe all, some, or none of the testimony presented by the parties." *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

Waldrep was an accomplice as a matter of law; therefore, Garner's conviction cannot rest on Waldrep's testimony absent corroborating evidence tending to connect Garner to the offense. *See* Tex. Code Crim. Proc. Ann. Art. 38.14 (West

4

2005); *Smith v. State*, 332 S.W.3d 425, 439 (Tex. Crim. App. 2011). The test for weighing the sufficiency of corroborating evidence is to eliminate from consideration the accomplice's testimony, and then examine the remaining testimony and evidence to determine if there is evidence that tends to connect the defendant with the commission of the offense. *Munoz v. State*, 853 S.W.2d 558, 559 (Tex. Crim. App. 1993).

To establish the commission of the crime of engaging in organized criminal activity, "the State must prove more than that the appellant committed or conspired to commit one of the enumerated offenses with two or more other people." *Nguyen v. State*, 1 S.W.3d 694, 697 (Tex. Crim. App. 1999). "[T]he State must prove that the appellant intended to 'establish, maintain, or participate in' a group of three or more, in which the members intend to work together in a continuing course of criminal activities." *Id.* The acts used to prove intent need not be criminal offenses. *Id.*

Garner argues the evidence is insufficient because the State proved only an agreement to jointly commit a single crime. There is evidence from which the jury could infer that Waldrep intended to participate in future crimes with Garner and Nixon because Waldrep testified that she pleaded guilty to engaging in organized criminal activity in connection with her delivery of methamphetamine to the jail.

5

The issue in this case, however, is whether the jury could infer that Garner intended to collaborate in committing future crimes with both Nixon and Waldrep.

Proof of coordinated action can support an inference that the parties agreed to collaborate in carrying on criminal activities. *See, e.g., Dowdle v. State*, 11 S.W.3d 233, 236–37 (Tex. Crim. App. 2000). The jail recordings and the evidence that methamphetamine was seized in a search of Nixon's home provide evidence from which the jury could reasonably infer that Garner and Nixon had a pre-existing and ongoing wholesaler-retailer methamphetamine distribution relationship. Garner recruited Waldrep to smuggle methamphetamine into the jail that Nixon provided to Waldrep for delivery to Garner. From her guilty plea to engaging in organized criminal activity in connection with this same occurrence, the jury could reasonably infer that Waldrep intended to join with Nixon and Garner in the commission of future crimes. The jury could reasonably infer Garner's intent to establish a combination through testimony that established Garner's previous drug dealing, from Garner's telephone conversations in which he arranged to have Nixon give methamphetamine to Waldrep and for Waldrep to smuggle the methamphetamine into the jail, and from Garner's statements that he would make things happen upon his release from jail and business was good between them. The jury could rationally find Garner guilty of engaging in organized criminal activity because the defendant's

intent to establish a combination is established on these facts. *See Nguyen*, 1 S.W.3d at 697–98. We overrule issue one.

### III. Extraneous Offenses

In issue two, Garner contends the trial court erred by admitting evidence that Garner committed extraneous offenses. Garner does not challenge the relevance of this evidence, but he argues that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403. Relevant evidence may be excluded if its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." *Id.* Balancing Rule 403 "includes, but is not limited to the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence." *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012). "Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial." *Shuffield v. State*, 189 S.W.3d 782, 787 (Tex. Crim. App. 2006).

Of the record cites mentioned in his appellate brief, we find a single preserved Rule 403 objection. Over Garner's Rule 403 objection, a detective with the Polk

7

County Sheriff's Department was permitted to testify that Garner and his brother have reputations as drug dealers. Additionally, Garner made a Rule 403 objection at trial to the admission of a September 21, 2013 video recording of a drug purchase between Garner and an informant.

Garner argues the testimony concerning drug transactions that did not involve Nixon and Waldrep lacked probative value concerning the existence of a combination and showed Garner in a "bad light." He argues the jury would be irrationally motivated to convict him for something because he engaged in two additional drug transactions but engaging in organized criminal activity was the sole option available to convict him. The State relied, at least in part, on the extraneous offense evidence to establish Garner's intent to establish a combination with Nixon and Waldrep. The extraneous offenses were probative of whether Garner was a drug dealer, as opposed to a mere consumer of methamphetamine. Under the Rule 403 balancing test, the trial court could have reasonably concluded that revealing Garner was a drug dealer was probative of his intent to establish a combination, and any prejudice was not unfair because the prejudicial effect arose from its probative value and not some unrelated matter. *See Martin v. State*, 144 S.W.3d 29, 33 (Tex. App.—Beaumont 2004), *aff'd,* 173 S.W.3d 463 (Tex. Crim. App. 2005); *Saxer v. State*, 115 S.W.3d 765, 776 (Tex. App.—Beaumont 2003, pet. ref'd). Because the trial court's

ruling does not lie outside the zone of reasonable disagreement about its admissibility, we overrule issue two.

## IV. Holding

The judgment of the trial court is affirmed.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on November 18, 2016
Opinion Delivered August 2, 2017
Do not publish

Before McKeithen, C.J., Kreger, and Johnson, JJ.

9